1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHNNY CLIFFORD JACKSON,

11                 Petitioner,              No. CIV S-10-0494 GEB EFB P

12          vs.

13   GARY SWARTHOUT,
                                           ORDER AND
14                 Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner without counsel seeking a writ of habeas corpus.  *See* 28

17   U.S.C. § 2254.  Petitioner requests appointment of counsel.  Respondent moves to dismiss the

18   petition on the grounds that it fails to state a claim cognizable in a federal habeas corpus petition.

19   For the reasons that follow, the undersigned denies the request for counsel and recommends that

20   the motion to dismiss be granted but that petitioner be granted leave to file an amended petition.

21   **I.      Background**

22          The petition concerns disciplinary action taken against petitioner in January 2008 for

23   allegedly failing to report to work.  Dckt. No. 1 at 5-9.[1]  On January 29, 2008, petitioner was

24   found guilty of refusing to work and was assessed a loss of 30 days' credit, among other

25   _____

26          [1] The page numbers cited herein are those assigned by the court's electronic docketing
     system and not those assigned by the parties.

1

punishments.  *Id.* at 28 (Ex. B).  Petitioner alleges that he was deprived of due process at the disciplinary hearing because the hearing officer refused to call witnesses and that he was further deprived of due process and equal protection because the alleged infraction was minor and should have resulted in progressive disciplinary action rather than "a CDC-115 for violation of not going to work for missing one day."  *Id.* at 9.

## II.   Request for Counsel

In his opposition to respondent's motion to dismiss, petitioner requests that the court appoint him counsel.  Dckt. No. 22 at 3.  There currently exists no absolute right to appointment of counsel in habeas proceedings.  *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996).  The court may appoint counsel at any stage of the proceedings "if the interests of justice so require." *See* 18 U.S.C. § 3006A; *see also*, Rule 8(c), Rules Governing § 2254 Cases.  The court does not find that the interests of justice would be served by the appointment of counsel at this stage of the proceedings.

## III.   Respondent's Motion to Dismiss

Respondent moves to dismiss the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases in the U.S. District Courts for failure to state a cognizable claim.  This court has authority under Rule 4 to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ."  As a corollary to that rule, the court may also consider a respondent's motion to dismiss, filed in lieu of an answer, on the same grounds.  *See, e.g., O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss for failure to exhaust state remedies); *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as the procedural vehicle to review a motion to dismiss for state procedural default).  Respondent argues that petitioner's claim is not cognizable in a habeas petition because petitioner has not established that issuance of the writ (requiring that the disciplinary conviction be expunged) would necessarily shorten the duration of his confinement.

1    "Federal law opens two main avenues to relief on complaints related to imprisonment: a

2    petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of

3    1871, Rev Stat § 1979, as amended, 42 U.S.C. § 1983.  Challenges to the validity of any

4    confinement or to particulars affecting its duration are the province of habeas corpus . . .;

5    requests for relief turning on circumstances of confinement may be presented in a § 1983

6    action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S.

7    475, 500 (1973)).  While not expressly framed as such, respondent's argument is a jurisdictional

8    one – respondent claims that success on the petition will not impact petitioner's custody and thus

9    the court is without power to hear the case under the habeas statute.  *See Docken v. Chase,* 393

10   F.3d 1024, 1028-29 (9th Cir. 2004) (treating the issues of whether a claim that could potentially

11   impact the duration of custody was cognizable or was within the court's federal habeas

12   jurisdiction as interchangeable).  The party seeking to invoke the jurisdiction of a federal court

13   bears the initial burden of pleading facts sufficient to establish jurisdiction.  *McNutt v. Gen'l*

14   *Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936); *Jackson v. Cal. Dep't of Mental Health*,

15   399 F.3d 1069, 1074 (9th Cir. 2005); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir.

16   1994).  Thus, the court must determine whether petitioner has alleged sufficient facts in the

17   petition to show that the challenged actions impacted his custody in a manner sufficient to

18   invoke the court's jurisdiction under the habeas statute.

19        This determination is complicated by a current lack of clarity in case law regarding

20   whether a potential, rather than certain, impact on custody is sufficient to invoke federal habeas

21   jurisdiction.  While the U.S. Supreme Court has repeatedly held that a prisoner who seeks

22   immediate or speedier release from custody (alleging a definite impact on custody in what is

23   often termed a "core" habeas challenge) must pursue his case through a habeas petition rather

24   than a § 1983 action, the Court has not explicitly held that a prisoner whose challenge might not

25   result in speedier release must press his case under § 1983 rather than a habeas petition.  *See*

26   *Docken v. Chase*, 393 F.3d 1024, 1028 (9th Cir. 2004) (noting that, "although Supreme Court

3

1   case law makes clear that § 1983 is not available where a prisoner's claim 'necessarily'

2   implicates the validity or duration of confinement, it does not set out any mirror-image limitation

3   on habeas jurisdiction.").   However, where a challenge does not even indirectly implicate the

4   fact or duration of the petitioner's confinement, the Ninth Circuit Court of Appeals has

5   concluded that the challenge is not cognizable in a habeas petition.[2]  *Crawford v. Bell*, 599 F.2d

6   890, 891-92 (9th Cir. 1972) (holding that a challenge to allegedly cruel and unusual prison

7   conditions could not be brought via habeas); *see id.* at 891  ("[T]he writ of habeas corpus is

8   limited to attacks upon the legality or duration of confinement."); *see also Muhammad*, 540 U.S.

9   at 754-55 (stating that the plaintiff, who brought a retaliation claim against a prison official, had

10   raised no claim on which habeas relief could have been granted on any recognized theory).

11        Generally, a prisoner challenging a disciplinary action with an attendant loss of time

12   credits must pursue the challenge in a habeas petition, because a decision in the case in the

13   prisoner's favor would require restoration of the lost time credits and would therefore accelerate

14   the inmate's date of release, making the case the type of "core" habeas challenge that must be

15   pursued by habeas petition.  *Preiser*, 411 U.S. at 487-88, 490. \\\  Here, however, petitioner is a

16   life-term inmate who passed his Minimum Eligible Parole Date ("MEPD") in 1977.  Resp.'s

17   Mot. to Dismiss, Ex. 1.  Respondent argues that, at the time the discipline challenged here was

18   imposed, petitioner was serving the portion of his sentence in which the duration of his

19   confinement is controlled solely by the Board of Parole Hearings ("BPH").  *See* Cal. Code Regs.

20   tit. 15, §§ 2280-2292.  According to respondent, the credit losses assessed against petitioner at

21

22        [2] Challenges to prison discipline that do not implicate the fact or duration of confinement
     may be brought instead under § 1983.  Because these claims may not be pursued in habeas

23   actions, the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), which requires that prisoners first
     obtain reversal or expungement of disciplinary convictions via habeas petition or other means

24   before challenging them in a civil rights action where success in the civil rights action would
     implicitly question the validity of the litigant's conviction or the duration of his sentence, does

25   not apply.  *Muhammad*, 540 U.S. at 751-52, 754-55; *see also Alejo v. Heller*, 328 F.3d 930, 937
     (7th Cir. 2003) ("[W]here a prisoner-litigant challenges only the conditions of confinement,

26   rather than the fact or duration of his confinement, *Heck*'s favorable-termination requirement
     does not apply, because federal habeas corpus relief is not available.").

1    his hearing concerned a type of time credit which could only advance petitioner's MEPD but

2    could not impact the BPH's determination of when to release petitioner.[3]  *See* Cal. Pen. Code §

3    2931.  Because petitioner's MEPD had long passed at the time of the discipline challenged here,

4    respondent argues, expungement of the disciplinary finding and accordant restoration of the time

5    credits would not advance petitioner's release.

6           Petitioner does not contend that restoration of the credit losses would directly advance his

7    release date or otherwise challenge respondent's characterization of California's parole-release

8    system.  Accordingly, the undersigned accepts respondent's argument that restoration of the lost

9    credits here would not itself advance petitioner's date of release.  This fact places petitioner's

10   case in the same position as that of a habeas petitioner who challenges a disciplinary action that

11   carries no credit loss.  Prisoners in this situation often argue that their disciplinary convictions

12   will nevertheless impact the duration of their confinement because they provide a basis on which

13   the BPH may deny parole.[4]  Thus, to rule on respondent's motion to dismiss, the court must

14   determine whether habeas jurisdiction exists when a petitioner challenges prison discipline that

15   will possibly, but not definitely, impact the duration of his confinement by influencing the

16   decision of the relevant parole authority on whether and when to grant the petitioner conditional

17   release.

18   _____

19   [3] The regulations governing life-prisoner parole consideration provide that such prisoners
     may earn postconviction credit that may advance their parole dates; respondent contends that this
20   credit scheme is separate from the one at issue in this case.  Cal. Code Regs. tit. 15, § 2290.

21   [4] Petitioner does not himself raise this argument with total clarity.  Petitioner's less-than-
     two-page opposition to the motion to dismiss is somewhat self-contradicting, and it appears that
22   he may not have fully understood respondent's argument (which, to be fair, is rooted in the
     complex and murky interplay between federal civil rights actions and writs of habeas corpus).
23   Petitioner first states that he "is not challenging any restoration of the thirty day credit loss
     therein imposed, or the duration of his confinement."  Dckt. No. 22, Pet'r's Opp'n to Resp.'s
24   Mot. to Dism. at 2.  However, petitioner then states that he wants the disciplinary finding vacated
     and removed from his file so that he will not "suffer further incarceration of a disciplinary
25   finding that was unfair and unconstitutionally (wrongfully) obtained."  *Id.* at 2-3.  Construing the
     opposition liberally, the court finds that it effectively raises the argument that the existence of
26   the disciplinary finding in petitioner's file will cause him to suffer lengthier incarceration than he
     otherwise would because he will not be paroled as early.

1    Courts within the Ninth Circuit have not responded uniformly to this issue. *Compare,*

2  *e.g., Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction . . .

3  exists when a petitioner seeks expungement of a disciplinary finding from his record if

4  expungement is likely to accelerate the prisoner's eligibility for parole."); *Hardney v. Carey*, No.

5  CIV S-06-0300 LKK EFB P, 2011 U.S. Dist. LEXIS 35603, at *18-22 (E.D. Cal. Mar. 31, 2011)

6  (recommending that the district court find that a challenge to a disciplinary conviction carrying

7  no credit loss was cognizable in habeas because of its likely impact on parole eligibility, adopted

8  in full by district court order dated June 6, 2011); *Johnson v. Swarthout*, No. CIV S-10-1568

9  KJM DAD P, 2011 U.S. Dist. LEXIS 43798, at *4-8 (E.D. Cal. Apr. 22, 2011) (same); *and Silva

10 v. Cal. Dep't of Corr.*, No. CIV S-03-1508 DFL GGH P, 2005 U.S. Dist. LEXIS 32046, at *2-3

11 (E.D. Cal. Dec. 9, 2005) (same, adopted in full by 2006 U.S. Dist. LEXIS 3661 (E.D. Cal. Jan.

12 31, 2006)) *with Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (stating that "habeas

13 jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison

14 condition will not necessarily shorten the prisoner's sentence."); *Everett v. Yates*, No. CIV F-

15 0150 AWI GSA HC, 2011 U.S. Dist. LEXIS 23224, at *2-5 (E.D. Cal. Mar. 8, 2011)

16 (recommending the dismissal of a habeas petition challenging a disciplinary conviction with no

17 attendant credit loss, because the potential impact of the conviction on the petitioner's parole

18 prospects was "entirely speculative"); *and Perrotte v. Salazar*, No. ED CV 06-00539-JOHN

19 (VBK), 2010 U.S. Dist. LEXIS 140385, at *9-16 (C.D. Cal. Nov. 8, 2010) (same, adopted in full

20 by 2011 U.S. Dist. LEXIS 6606 (C.D. Cal. Jan 24, 2011)).[5] As is apparent from these cases,

21

22    [5] Unsurprisingly, courts have also disagreed as to whether a life-term prisoner past his
   MEPD may challenge a disciplinary conviction in a habeas petition for the same reasons that
23 they have disagreed as to whether prisoners in general may challenge disciplinary findings with
   no attendant loss of time credits in a habeas petition. *Compare Calderon-Silva v. Uribe*, No.
24 SACV 09-832 MMM(JC), 2010 U.S. Dist. LEXIS 138292, at *4-8 (C.D. Cal. Aug. 31, 2010)
   (recommending dismissal of a habeas petition in which a life-term prisoner challenged a
25 disciplinary conviction because restoration of the lost credits would not advance the petitioner's
   parole date and "the mere possibility that the . . . disciplinary conviction could be detrimental to
26 petitioner in future parole hearings is too speculative to serve as the basis for a habeas corpus
   petition," adopted in full by 2010 U.S. Dist. LEXIS 138310 (C.D. Cal. Dec. 21, 2010) *and*

1    courts within this circuit have varied when addressing habeas challenges to prison disciplinary

2    decisions that would have an impact on the duration of confinement only to the extent that they

3    may affect the petitioners' parole eligibility.  A brief discussion of the apparent source of the

4    disagreement and the various approaches courts have taken is appropriate.

5         Three Ninth Circuit cases are central to the controversy:  *Bostic v. Carlson*, 884 F.2d

6    1267 (9th Cir. 1989), *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), and *Docken v. Chase*,

7    393 F.3d 1024 (9th Cir. 2004).  In *Bostic*, the court of appeals reviewed district court dismissals

8    of ten separate habeas petitions filed by the same petitioner, challenging nine prison disciplinary

9    actions taken against him. 884 F.2d at 1269.  Prison officials had assessed a forfeiture of good-

10   time credits for some of the infractions, but the remainder did not carry a loss of time credits –

11   only a term of segregated housing.  *Id.* at 1269.  In each of the petitions, the petitioner sought

12   expungement of the infractions from his disciplinary record.  *Id.*  The court "assume[d]" that

13   habeas jurisdiction existed over all the petitions, even those challenging discipline with no

14   attendant credit loss, stating:

15        Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's
          claim that he has been denied good time credits without due process of law.
16        [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that
          he has been subjected to greater restriction of his liberty, such as disciplinary
17        segregation, without due process of law.[6] [citations] Habeas corpus jurisdiction

18   ───────────────────

19   *Thomas v. Wong*, No. C 09-0733 JSW (PR), 2010 U.S. Dist. LEXIS 39748, at *3-10 (N.D. Cal.
     Mar. 26, 2010) (dismissing a habeas petition in which a life-term prisoner challenged a
20   disciplinary finding because the credit loss imposed could not increase petitioner's minimum or
     maximum prison terms) *with Oberpriller v. Grounds*, No. C 09-5531 CRB (PR), 2010 U.S. Dist.
21   LEXIS 123998, at *1-4 (N.D. Cal. July 14, 2010) (rejecting respondent's argument that the
     petition of a post-MEPD life-term inmate challenging a serious disciplinary finding was not
22   cognizable, because the serious disciplinary finding constituted "an obstacle to a favorable
     parole decision" and thus its expungement would likely accelerate the petitioner's parole
23   eligibility).

24        [6] This statement has been undercut by the Supreme Court's indication in *Muhammad* that
     claims that do not in any way implicate the fact or duration of confinement are not cognizable
25   under the federal habeas statutes.  *See* 540 U.S. at 754-55 (stating that the plaintiff, who brought
     a retaliation claim against a prison official, had raised no claim on which habeas relief could
26   have been granted on any recognized theory); *see also Crawford*, 599 F.2d at 891 ("[T]he writ of
     habeas corpus is limited to attacks upon the legality or duration of confinement.").  Further,

also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. [*McCollum v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982)].

*Id.* at 1269 (emphasis added). The court did not elaborate on when expungement would be "likely to accelerate" parole-eligibility.[7]

The court revisited *Bostic*'s statements on habeas jurisdiction in *Ramirez.* 334 F.3d at 858-59. In *Ramirez*, a prisoner brought a civil rights action under § 1983 rather than a habeas petition to challenge the procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges (but no loss of time credits), and a referral to administrative segregation. *Id.* at 852-53. He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole." *Id.* at 859 n.6. The district court dismissed the case, finding it barred by *Heck*'s favorable termination rule after determining

---

placement in administrative segregation does not give rise to an actionable claim under the Due Process Clause unless the segregated housing presents a "dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

[7] *Bostic* spoke of "eligibility" for parole. In California, release on parole is a two-step process – first, the prisoner must become "eligible" to be *considered* for parole (sometimes referred to simply as "eligibility") and, second, the prisoner must be found "eligible" to be *released* on parole (sometimes referred to simply as "suitability"). *See Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (highlighting this distinction for purposes of § 1983 challenge to Hawaii's Sex Offender Treatment Program). It is unclear whether the *Bostic* panel's jurisdictional pronouncement was limited to claims likely to accelerate eligibility for consideration or covered both those claims and claims likely to accelerate eligibility for release, as both concepts can be covered broadly by the term "eligibility" and courts often do not distinguish between the two steps. *See* The Free Merriam-Webster Dictionary entry for "eligible," http://www.merriam-webster.com/dictionary/eligible (last checked July 5, 2011) (defining "eligible" as "qualified to participate or to be chosen" and "worthy of being chosen"). The undersigned assumes, absent definitive indication to the contrary, that the court intended that habeas jurisdiction exists both when success on the claim is likely to accelerate the date on which the petitioner becomes eligible for parole consideration as well as when success on the claim is likely to accelerate the date on which the petitioner will ultimately be found suitable for release on parole. This assumption is consistent with the underlying purpose of the writ of habeas corpus, which is concerned with the petitioner's ultimate release. So long as success on the claim is likely to accelerate release under *Bostic*, the court sees no reason to distinguish between "eligibility" and "suitability."

1   that success in the case would necessarily imply that the disciplinary finding was invalid.  *Id.* at

2   852; *see supra* n.2.

3          The Court of Appeals reversed, holding that the favorable termination rule does not apply

4   to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's

5   confinement.  *Id.* at 854-58; *see supra* n.2.  The court rejected the state's *Bostic*-based argument

6   that the plaintiff's claim that his disciplinary hearing violated due process was "logically

7   inseparable from an attack on the outcome of that hearing, and that a judgment in his favor

8   would necessarily imply the invalidity of his disciplinary conviction."  *Id.* at 859.  The court

9   reasoned that the favorable termination rule applies only if success in the § 1983 action would

10  necessarily imply the invalidity of a disciplinary finding and necessitate a reduction in the

11  plaintiff's length of confinement.  *Id.*  The state had failed to show that expungement of the

12  disciplinary finding would necessarily accelerate the plaintiff's release, because the parole board

13  could still deny parole on the basis of other factors.  *Id.* ("As Ramirez's suit does not threaten to

14  advance his parole date, his challenge to his disciplinary hearing is properly brought under §

15  1983.").

16         In the course of its analysis, the court discussed *Bostic* in some detail:

17             Bostic does not hold that habeas corpus jurisdiction is always available to seek
               the expungement of a prison disciplinary record.  Instead, a writ of habeas corpus
18             is proper only where expungement is "likely to accelerate the prisoner's eligibility
               for parole."  Bostic, 884 F.2d at 1269 (emphasis added). . . .  Bostic thus holds
19             that the likelihood of the effect on the overall length of the prisoner's sentence
               from a successful § 1983 action determines the availability of habeas corpus."
20

21  *Id.* at 858.  From this, the court made the following leap, assuming that the courts' jurisdiction

22  over habeas petitions and their jurisdiction over § 1983 actions are mutually exclusive:

23  "[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a

24  prison condition will not necessarily shorten the prisoner's sentence."  *Id.* at 859 (emphasis

25  added).  For ease of discussion, this quote will be referred to herein as the "mutual exclusivity

26  rule."  This language has created uncertainty, because challenges to prison conditions that will

necessarily shorten the prisoner's sentence fall squarely within the "core" of habeas jurisdiction identified in *Preiser*, and the *Ramirez* language indicates that only "core" habeas cases can be brought in federal habeas petitions.  It is important to recall that *Preiser* simply held that "core" cases had to be brought in habeas petitions but did not hold that habeas jurisdiction was limited to such cases.  However, *Bostic* – quoted with apparent approval by the *Ramirez* panel – squarely found habeas jurisdiction to exist in a non-"core" situation, where success would not necessarily spell earlier release, but was merely likely to accelerate parole-eligibility.  Thus, *Ramirez*'s mutual exclusivity rule quoted above appears inconsistent both with the opinion's prior reliance on *Bostic* for the proposition that "the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus" and with *Bostic* itself.

One year after *Ramirez*, the court again visited the intersection of habeas and § 1983 in *Docken*.  393 F.3d at 1026-31.  In *Docken*, as in *Bostic*, the court reviewed the dismissal of a habeas petition for want of jurisdiction.  *Id.* at 1025, 1026.  Unlike *Bostic*, the petitioner in *Docken* did not challenge a prison disciplinary finding, but rather the timing of his parole-eligibility reviews.  *Id.* at 1025-26.  The district court had concluded that the claim could only be brought under § 1983 rather than habeas, because the plaintiff's success in the case would not "entitle" him to release, just an earlier eligibility review.  *Id.*

In reversing that conclusion, the Court of Appeals discussed at length U.S. Supreme Court and Ninth Circuit precedent.  The first conclusion the court drew from that precedent was that, "although Supreme Court law makes clear that § 1983 is not available where a prisoner's claim 'necessarily' implicates the validity or duration of confinement, it does not set out any mirror-image limitation on habeas jurisdiction."  *Id.* at 1028.  The court, citing *Bostic*, noted that its own precedent held that habeas jurisdiction was available in some non-"core" circumstances. *See id.* ( "In [*Bostic*], for example, we held that 'habeas corpus jurisdiction . . . exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely

to accelerate the prisoner's eligibility for parole.'").

> Importantly, in speaking of claims only "likely to accelerate" eligibility for parole, Bostic defined a class of suits outside the "core" habeas claims identified in *Preiser*. Success on the merits in such cases would not "necessarily" implicate the fact or duration of confinement. Instead, such claims have, at best, only a possible relationship to the duration of a prisoner's confinement, as eligibility for parole is distinct from entitlement for parole.

*Id.* at 1028-29. Thus, the court recognized that, under *Bostic*, habeas jurisdiction was proper even where success on the claim would not necessarily shorten the plaintiff's sentence – a view of habeas jurisdiction squarely at odds with the mutual exclusivity rule announced in *Ramirez*. In fact, the *Docken* court went further than *Bostic*, finding cognizable not only those challenges that, if successful, were "likely to accelerate" release, but also those that, if successful, "*could potentially* affect the duration of . . . confinement." *Id.* at 1031 (emphasis added).

Unfortunately, the *Docken* panel did not expressly resolve the inconsistency between *Bostic* and *Ramirez*. It did attempt to distinguish *Ramirez*'s mutual exclusivity rule in a footnote by stating that it was limited to the circumstances presented in that case, where the prisoner challenged "internal disciplinary procedures" and consequent administrative segregation that did not "deal with the fact or duration of his confinement." *Id.* at 1030 n.4. A close reading of *Ramirez* reveals that the case cannot be distinguished from *Bostic* on those grounds, however. As in *Ramirez*, the petitioner in *Bostic* challenged at least one prison disciplinary action that resulted in administrative segregation but no loss of time credits. Importantly, in both cases, the prisoners sought expungement of a disciplinary finding from their records, and the prisoner in *Ramirez* specifically argued that the challenged disciplinary findings would have an adverse impact on his parole eligibility. *Ramirez*, 334 F.3d at 859 n.6; *Bostic*, 884 F.2d at 1269. Thus, both cases "deal[t] with the fact or duration of confinement" in the same manner.

Here, this court must decide whether to follow *Ramirez*'s mutual exclusivity rule or the approach of *Bostic* and *Docken*. Some district courts that have taken the latter route have reasoned that *Ramirez*'s mutual exclusivity rule was dictum and thus not binding. *E.g.*, *Foster v.*

1    *Washington-Adduci*, No. CV 09-07987-PSG (DTB), 2010 U.S. Dist. LEXIS 41578, at *12 (C.D.

2    Cal. Mar. 24, 2010); *Hickey v. Adler*, No. 1:08-cv-00826-JMD-HC, 2009 U.S. Dist. LEXIS

3    67064, at *6 n.4 (E.D. Cal. July 27, 2009); *Dutra v. Cal. Dep't of Corr. & Rehab.*, No. C

4    06-0323 MHP, 2007 U.S. Dist. LEXIS 82377, at *16-17 (N.D. Cal. Nov. 6, 2007); *Drake v.

5    Felker*, No. 2:07-cv-00577 (JKS), 2007 WL 4404432, at *2 (E.D. Cal. Dec. 13, 2007).  The

6    undersigned agrees with that reasoning.  The mutual exclusivity rule was not essential to the

7    holding in *Ramirez*, which held simply that *Heck*'s favorable termination rule does not apply to

8    § 1983 cases where success in the action would not necessitate earlier release.  That holding is

9    not contrary to, and may coexist beside, *Docken*'s conclusion that § 1983 and habeas are not

10   mutually exclusive but instead may both be available to prisoners in some instances, specifically

11   in those challenges that implicate the duration of confinement but would not necessarily, if

12   successful, result in speedier release.[8]

13          Accordingly, the court finds that, under *Bostic* and *Docken*, habeas jurisdiction exists

14   over the instant petition if, from the facts as pleaded, it appears that expungement of the

15   disciplinary action challenged by petitioner could potentially accelerate petitioner's release.

16   However, a review of the petition reveals that petitioner has failed to allege facts sufficient to

17   show that success on his claims could accelerate his release.  Thus, the factual allegations fail to

18   invoke the court's jurisdiction under the federal habeas statute.  Accordingly, the undersigned

19   recommends that the court grant respondent's motion to dismiss, but with leave to amend.  *See

20   Davis v. Haviland*, No. CIV S-10-1029 KJM DAD P, 2011 U.S. Dist. LEXIS 14451, at *11

21   (E.D. Cal. Feb. 4, 2011).  If petitioner elects to file an amended petition, he should include all

22   facts supporting his claim that expungement of the discipline could accelerate his release on

23

24          [8]  Additionally, even if *Ramirez*'s mutual exclusivity pronouncement was essential to its
     holding, its weight appears to be undermined by *Bostic*'s earlier ruling to the contrary.  *See
25   Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam) (noting that
     rulings by three-judge panels are "law of the circuit," and are binding on subsequent three-judge
26   panels).

1  parole.  (For example, petitioner should allege the dates of any parole suitability hearings at

2  which the disciplinary action was considered, any comments made by the BPH at those hearings

3  suggesting the impact of the disciplinary action on the decision to deny parole, and any other

4  supporting facts.)

5  **IV.   Mootness**

6          Although potentially within the jurisdiction of the habeas statute for the reasons just

7  discussed, it is possible that petitioner's claims are nevertheless moot and are thus outside the

8  court's jurisdiction under Article III of the U.S. Constitution.  Under Article III, § 2, a federal

9  court's jurisdiction is limited to those cases which present "cases-or-controversies."  *Spencer v.*

10  *Kemna*, 523 U.S. 1, 7 (1998).  In habeas actions, the case-or-controversy requirement mandates

11  that a petitioner must have suffered, or be threatened with, an actual injury traceable to the

12  respondent and redressable by issuance of the writ.  *See id.*  Respondent does not argue that

13  petitioner's claims are moot, but federal courts "have an independent duty to consider" mootness

14  *sua sponte*.  *Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004).  Like jurisdiction under the

15  habeas statute, it is petitioner's obligation to allege facts sufficient to show that his claim is

16  within the court's power under Article III.  *Jackson*, 399 F.3d at 1074.

17          In general, a habeas petition challenging a prison disciplinary action no longer presents

18  such a case or controversy, and therefore becomes moot, when the punishment for the action has

19  been withdrawn or completed at the time of the petition.  *See Wilson v. Terhune*, 319 F.3d 477,

20  479, 481-82 (9th Cir. 2003).  Where the petitioner can show that so-called "collateral

21  consequences" flow from the disciplinary action (i.e., circumstances beyond the punishment

22  imposed that constitute an actual injury), however, the case remains justiciable.  *Id.* at 479-80;

23  *see Spencer*, 523 U.S. at 14-16.  This court must therefore determine whether petitioner has

24  alleged facts showing that the disciplinary sanctions against him have not yet been completed or

25  that collateral consequences of the disciplinary action cause his case to remain live.

26  ////

1    The petition reveals that the punishment imposed on petitioner at the January 29, 2008

2    disciplinary hearing consisted of: (1) the 30-days loss of time credits discussed above; (2)

3    referral to the Institutional Classification Committee for placement in the Secured Housing Unit

4    for an unspecified amount of time; (3) loss of privileges for 90 days (from January 29, 2008 to

5    April 28, 2008); and (4) being counseled and advised of expectations.  Dckt. No. 1, Pet. at 28

6    (Ex. B).  The petition in this case was filed on March 1, 2010, long after the expiration of the

7    term of lost privileges.  The loss of time credits will not impact petitioner unless it is used by the

8    BPH to deny him parole.  It is unclear whether petitioner remains subject to incarceration in

9    SHU or otherwise continues to be subjected to punishment for the disciplinary charge.  Thus, the

10   undersigned recommends that the court order petitioner, in any amended petition, to allege facts

11   showing that his case is not moot, either because he remains subject to the discipline imposed on

12   January 29, 2008 or because that discipline carries collateral consequences.[9]

13

14        [9] In anticipation of any argument petitioner may make that his case is not moot because
     the disciplinary finding may be considered by parole authorities in determining whether and

15   when he should be conditionally released, the undersigned will provide a brief summary of the
     relevant authorities regarding whether potential impact on parole-eligibility constitutes a

16   collateral consequence.  In *Spencer v. Kemna*, the Supreme Court considered whether an order
     revoking parole carried collateral consequences.  523 U.S. at 14-16.  The petitioner in *Spencer*

17   argued that the order could be used against him in a future parole proceeding.  *Id.* at 14.  The
     Court found this possibility insufficient to be considered a collateral consequence, however,

18   because, the potential use of the parole revocation order in a future parole suitability hearing was
     merely "a possibility rather than a certainty or even a probability."  *Id.*  This was so, the court

19   concluded, because under state law, the order would be only one factor among many to be
     considered by the parole authority in a future parole proceeding, and the parole authority had

20   almost unlimited discretion to determine suitability.  *Id.*
        In *Wilson v. Terhune*, the petitioner argued that a prison disciplinary finding (based on an

21   escape attempt) would adversely affect his future parole prospects.  319 F.3d at 482.  The Ninth
     Circuit similarly concluded that such a possibility did not constitute a collateral consequence,

22   because "the decision to grant parole is discretionary" and the disciplinary finding would be only
     one factor among many considered by the BPH.  *Id.*; *see also Carranza v. Gomez*, 221 Fed.

23   Appx. 582, 583 (9th Cir. 2007) (characterizing *Wilson* as holding that "impaired parole prospects
     do not constitute collateral consequences.").  The court also noted that the BPH would likely

24   consider the underlying conduct, which the petitioner did not deny, rather than the disciplinary
     finding itself, so expunging the disciplinary conviction would not improve his parole prospects.
     *Wilson*, 319 F.3d at 482.

25        Here, unlike *Wilson*, petitioner denies the charges underlying his disciplinary finding.  It
     is therefore possible that expungement of the finding from his record would improve his parole

26   prospects to the extent that the discipline, and the conduct underlying it, would no longer be

14

1 **V.     Order and Recommendation**

2        Accordingly, it is hereby ORDERED that petitioner's request for counsel is denied.  It is

3 further RECOMMENDED that respondent's November 15, 2010 motion to dismiss be granted,

4 but that petitioner be granted leave to file an amended petition within 30 days of any order

5 adopting these recommendations including factual allegations showing: (1) that success on

6 petitioner's claims could accelerate his release and (2) that petitioner remains subject to the

7 discipline imposed on January 29, 2008 or that collateral consequences flow from that discipline

8 which prevent the case from being moot.

9        These findings and recommendations are submitted to the United States District Judge

10 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11 after being served with these findings and recommendations, any party may file written

12 objections with the court and serve a copy on all parties.  Such a document should be captioned

13 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

14 ////

15 ////

16 ////

17 

18 considered by the BPH or by petitioner's evaluating psychologists.  At the same time, the discipline remains but one consideration among many reviewed by the BPH and the Governor in

19 deciding petitioner's parole suitability.  Accordingly, under *Spencer* and *Wilson*, absent sufficient facts showing an actual impact on parole prospects, the potential use of the

20 disciplinary conviction in future parole proceedings may be too speculative to be considered a collateral consequence.  *Compare Maxwell v. Neotti*, No. 09cv2660-L (BLM), 2010 U.S. Dist.

21 LEXIS 88062, *18-25 (S.D. Cal. July 15, 2010) (finding a habeas challenge to a disciplinary conviction with no attendant credit loss cognizable in habeas but nonetheless moot because the

22 BPH had "complete discretion in determining whether, and to what extent" to consider the rules violation in determining parole eligibility, making it "no more than a possibility that the

23 conviction would impact Petitioner's parole eligibility, thereby rendering this potential consequence too speculative to satisfy Article III's 'injury in fact' requirement.") *with Noor v.*

24 *Martel*, No. CIV. 08-1656 WBS JFM, 2009 U.S. Dist. LEXIS 56966, at *8-13 (E.D. Cal. July 2, 2009) (finding a habeas challenge to a disciplinary conviction with no attendant credit loss not

25 moot where the petitioner submitted transcripts of prior suitability hearings at which the BPH emphasized that petitioner must demonstrate his ability to be "disciplinary-free" for a long

26 period of time in order to be found suitable for release and where petitioner challenged both the disciplinary conviction and the underlying conduct).

1   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  August 31, 2011.

4

5   EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26