UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY CLIFFORD JACKSON,<br><br>  Petitioner,<br><br>  vs.<br><br>GARY SWARTHOUT,<br><br>  Respondent. | No.  2:10-cv-0494-GEB-EFB P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a disciplinary conviction that he received in 2008 for refusing to report to work.  He seeks federal habeas relief on due process grounds, claiming that his conviction is not supported by sufficient reliable evidence and that he was denied the right to present witnesses at his disciplinary hearing.  Upon careful consideration of the record and the applicable law, it is recommended that his petition be denied.

**I. Background**

On January 8, 2008, Correctional Officer (C/O) S. Cheser wrote a rules violation report (RVR) charging petitioner with "refusing to work."  ECF No. 28 at 40.  C/O Cheser alleged, in pertinent part, that:

> On 1-7-2008, Inmates housed on Facility I & II participated in a group action by refusing to report to their work assignments.  All inmates were afforded an opportunity to go to work through a

1

>general work/vocational/educational release.  This work stoppage and organized movement by the Inmate population required Facilities I & II to be placed on a modified program, severely impacting the orderly operations of the prison.  Communications with Inmate population have revealed that this work stoppage is taking place in part due to a yard schedule change.
>
>On 01-07-08, at approximately 11:45 hours, I, S. Cheser, ordered I/M Jackson . . . to go to work.  I/M Jackson refused to attend his assignment stating, "I am afraid for my life."  I identified I/M Jackson by prior contact and his state issued ID card.
>
>I/M Jackson deliberate refusal to attend his work assignment showed his willingness to participate in this work stoppage.  All inmates were informed that refusal would be documented on a CDC Form 115.

*Id.*

The disciplinary hearing on the RVR was held on January 29, 2008.  *Id.*  Petitioner appeared at the hearing ready to proceed and stated that he was in good health.  *Id.* at 41. Petitioner received copies of all applicable reports to be used as evidence against him at least twenty-four hours in advance of the hearing.  *Id.*  Petitioner explained his understanding of the "charges/process/options/instructions" to the hearing officer's satisfaction.  *Id.*  According to the RVR report, petitioner "did not choose to have witnesses present at his disciplinary hearing."  *Id.* at 42.  Petitioner denied the charges against him, stating, "No statement."  *Id.*

Petitioner was found guilty of a violation of Cal. Code Regs. tit. 15, § 3041(b), participating in a work strike/refusing to work, based upon the preponderance of the evidence introduced at the disciplinary hearing.  *Id.*  That evidence consisted of the January 7, 2008 RVR authored by C/O Cheser, wherein Cheser stated that he ordered petitioner to go to work but petitioner refused, stating that he was afraid for his life.  *Id.*  Petitioner was assessed 30 days loss of time credits, a referral to the next available Institutional Classification Committee for a possible security housing unit (SHU) assessment; ninety days loss of privileges, and a 90 day suspension of Friday visiting privileges.  *Id.*

After exhausting the administrative appeal process, petitioner challenged his disciplinary conviction in a petition for a writ of habeas corpus filed in the California Superior Court.  ECF No. 38-1 at 6.  He claimed that: (1) his due process rights were violated because the RVR falsely

2

stated that C/O Cheser came to his cell door; (2) his due process rights were violated because C/O Cheser and Correctional Officer Z. Vierra were not called as witnesses at his disciplinary hearing, pursuant to his request; and (3) he was "denied due process and equal protection of the law." *Id.* at 6-12. The Superior Court denied these claims, reasoning as follows:

> The Writ of Habeas Corpus was filed in the above entitled matter on June 23, 2009, by Johnny Jackson (Petitioner), a state inmate at California State Prison – Solano. Petitioner claims that the California Department of Corrections (CDC) violated due process at this disciplinary hearing when it found him guilty with "false" or insufficient evidence, and it denied him the right to present witnesses S. Cheser and Correctional Officer Vierra.
>
> Petitioner has failed to state a prima facie case for relief on any of his claims. (*People v. Duvall* (1995) 9 Cal.4th 464.) Some evidence exists supporting Petitioner's guilty finding as required by law. (*In re Zepeda* (2006) 141 Cal.App.4th 1493.) The some evidence standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." (*Superintendent v. Hill*, 472 U.S. 455-456.) The record shows that Petitioner refused to go to work.
>
> Petitioner has not shown that his disciplinary proceeding was prejudiced by the denial of any witnesses. A due process violation does not require reversal unless prejudice is shown. (*Chapman v. California* (1967) 386 U.S. 18, 24; *In re Angela* (2002) 99 Cal.App.4th 389, 391.) Petitioner has not clearly indicated to what S. Cheser would testify, and he has not shown that the testimony of Correctional Officer Vierra could have produced a better outcome.

ECF No. 38-1 at 2-3.

The Superior Court denied his habeas petition and petitioner then filed a petition for a writ of habeas corpus in the California Court of Appeal, raising the same claims. ECF No. 38-2 at 4-10. The Court of Appeal summarily denied that petition. *Id.* at 2. Finally, petitioner challenged his disciplinary conviction in a habeas petition filed in the California Supreme Court. ECF No. 38-3. That petition was also summarily denied. ECF No. 38-4.

Petitioner filed this federal petition for a writ of habeas corpus on March 1, 2010. Respondent filed a motion to dismiss, which was granted on September 27, 2011. The petition was dismissed with leave to file an amended petition. Petitioner filed an amended petition and respondent again moved to dismiss. That motion was denied and on September 9, 2013,

/////

1  respondent filed an answer to the petition.  Thereafter, petitioner sought leave to amend his
2  petition to add an additional claim and that motion was denied on March 4, 2015.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

4

widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

/////

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

6

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Due Process Claims**

**A. Petitioner's Allegations**

Petitioner claims that his disciplinary conviction violates his right to due process. He first argues that the RVR contains various incorrect statements. He states that C/O Cheser never spoke with him on January 7, 2008, contrary to Cheser's statement in the RVR that he told petitioner to report to work on that day but petitioner refused. ECF No. 28 at 8.[2] Petitioner also asserts that the RVR falsely states that "all inmates were afforded an opportunity to go to work through a general work/vocational/educational release." *Id.* He explains that the facility was actually put on lockdown. *Id.*

Petitioner next argues that he was "denied the opportunity" to present witness testimony at his disciplinary hearing. *Id.* He states that he requested that correctional officers Cheser and Vierra be called as witnesses. *Id.* Petitioner contends that C/O Cheser could have testified that he

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

7

never spoke with petitioner on January 7, 2008, contrary to his statement in the RVR that he did. *Id.* at 8-9. Petitioner further explains that Officer Vierra "would have confirmed" that he came to petitioner's cell on January 7, 2008 (a Monday) and asked him whether he was going to work. According to petitioner, he responded that he had to report to the medical clinic that morning to "get his medication and injection that he receives every Monday morning." *Id.* at 9.

Petitioner states that he showed Officer Vierra his "Inmate Medical Activity Card" which authorized his visit to the medical clinic and that Vierra said "OK" and wrote the information down before leaving petitioner's cell. *Id.* Petitioner states that Officer Vierra never gave him a "direct order" to report to work. *Id.* He explains:

> Here, Mr. Vierra's testimony would have elucidated he was the individual that spoke with petitioner on 1/7/08; and that he only documented petitioner's statement regarding receiving medical treatment prior to attending his work assignment, never succinctly directing petitioner to report to work without his medical treatment. If petitioner was permitted to summon Mr. Cheser, to the disciplinary hearing he would have simply asked him, why he authored the RVR without ever speaking with him. His answer would have been; custody staff directed him to do so, as with myriad other freestaff employees.

*Id.* at 9-10.³

Petitioner argues that witnesses Cheser and Vierra were necessary to prove his defense that Cheser never spoke with him on January 7, 2008, and that "it is axiomatic petitioner could not have refused to attend his work assignment." *Id.* at 8. Petitioner also argues that calling witnesses Cheser and Vierra at his disciplinary hearing would not have jeopardized institutional security or correctional goals, and that prison authorities had no justification for denying him the right to call these witnesses. *Id.* at 10, 11. Petitioner sums up his claims as follows:

> In conclusion we have an RVR authored by a non-percipient Reporting Employee, which in itself requires the RVR at issue to be vacated. Then we have the refusal to summon percipient witnesses whose testimony would have evinced the aforementioned and elucidated exculpatory evidence i.e., petitioner was never

---

³ Petitioner notes that the decision on his administrative appeal erroneously stated that his medical record did not reflect that he had a standing appointment to go to the medical clinic on Mondays to receive medication. *Id.* Petitioner provides evidence that he had a "medical activity card" which allowed him to report to the clinic every Monday morning to receive medication and an injection. *Id.* at 56.

8

>specifically directed to report to work on 1/7/08. Notwithstanding, the administrative appeal system refusing to acknowledge petitioner was in fact issued a valid Inmate Medical Activity Card for Monday mornings, e.g., on 1/7/08.

*Id.* at 12.

### B. Applicable Legal Principles

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The Ninth Circuit has observed that prison disciplinary proceedings command the least amount of due process along the prosecution continuum. *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

An inmate is entitled to no less than 24 hours advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. *See Wolff*, 418 U.S. at 563. An inmate also has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. *See also Ponte v. Real*, 471 U.S. 491, 495 (1985). The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." *Wolff*, 418 U.S. at 571.

The decision rendered on a disciplinary charge must be supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." *Id.* at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)). *See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990); *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of

9

witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995). Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. *Toussaint*, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." *Washington v. Harper*, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." *Hill*, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. *Wolff*, 418 U.S. at 560-63.

**C. Analysis**

In this case, the requirements of procedural due process were satisfied with regard to petitioner's disciplinary proceedings. The RVR states, and petitioner does not deny, that petitioner received all applicable reports, including the RVR, at least 24 hours in advance of the hearing. ECF No. 28 at 41. Petitioner was also given a written statement of the evidence relied upon by prison officials and the reasons for the disciplinary action taken against him.

There was "some evidence" supporting petitioner's disciplinary conviction for participating in a work strike and refusing to report to work. Petitioner was charged with violating Cal. Code Regs. tit. 15, § 3041(b), which requires that "[i]nmates must report to their place of assignment at the time designated by the institution's schedule of activities and as instructed by their assignment supervisor." The disciplinary hearing officer found petitioner guilty of this charge, relying on the allegation by C/O Cheser in the RVR that on January 7, 2008, he ordered petitioner to report to work but petitioner refused, stating that he was afraid for his life.

*Id.* at 42. C/O Cheser's statements in the RVR constitute "some evidence" to support petitioner's disciplinary conviction. Indeed, petitioner does not dispute that he failed to report to work on January 7, 2008.

Petitioner claims that he never spoke with C/O Cheser on January 7, 2008. He asserts, in essence, that Cheser's statements in the RVR with regard to his conversation with petitioner about reporting to work were untrue and therefore insufficient to support his disciplinary conviction. Petitioner fails to support this argument with any evidence, other than his self-serving statements offered long after the disciplinary proceedings were concluded. Petitioner also does not explain why he did not make this argument, or any argument, in his defense at the disciplinary hearing. Petitioner's unsupported allegations fail to establish that the evidence supporting his conviction was insufficient. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") Moreover, self-serving allegations by a habeas petitioner, without more, are not sufficient to warrant relief. *See e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (ineffective assistance of counsel claim denied where, aside from his self-serving statement, which was contrary to other evidence in the record, there was no evidence to support his claim); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (noting that there was no evidence in the record to support petitioner's ineffective assistance of counsel claim, "other than from Dows's self-serving affidavit"); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (defendant's self-serving statement, under oath, that his trial counsel refused to let him testify insufficient, without more, to support his claim of a denial of his right to testify).

The determination of the California Supreme Court that petitioner's disciplinary conviction was supported by sufficient evidence is not unreasonable in light of the minimally stringent nature of that standard of proof. It is not the duty of this court to act as the hearing officer and re-determine the nature of petitioner's offenses and punishment. *See Hill*, 472 U.S. at 455. As noted above, this court may not independently assess the credibility of witnesses or re-weigh the evidence in determining whether "some evidence" supports a prison disciplinary conviction. *Hill*, 472 U.S. at 455. The result of a prison disciplinary proceeding will be

1  overturned by a federal court "only where there is no evidence whatsoever to support the decision
2  of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994). That is not the
3  case here. As noted above, the disciplinary hearing officer was entitled to rely on C/O Cheser's
4  statements in the RVR to find petitioner guilty of the charged offense.

5  Petitioner also claims that prison authorities violated his right to due process in refusing to
6  allow him to call Officers Cheser and Vierra as witnesses at his disciplinary hearing. An inmate
7  has the right to call witnesses at a disciplinary hearing when permitting him to do so will not
8  compromise the security of the institution. The RVR states that petitioner did not request
9  witnesses at the disciplinary hearing and that he declined to make a statement in his defense.
10 Petitioner does not address these statements in the RVR. Rather, he simply asserts that he was
11 not allowed to call Officers Cheser and Vierra as witnesses at his disciplinary hearing even
12 though he requested these witnesses. The record before the court does not support this assertion.
13 However, assuming arguendo that prison authorities erred in refusing to allow petitioner to call
14 these officers as witnesses at the disciplinary hearing, any error was harmless.

15 The erroneous denial of witnesses at a disciplinary hearing is subject to harmless error
16 review. *Knight v. Evans*, No. C 05-3670 SBA (PR), 2008 U.S. Dist. LEXIS 79058, * (N.D. Cal.
17 Sept. 4, 2008) (citing *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (joining the Second,
18 Fourth, and Seventh Circuits applying harmless error review to disciplinary proceedings in
19 federal prisons). Thus, habeas relief is appropriate only if the alleged errors at the disciplinary
20 hearing are prejudicial under the "harmless error" test articulated in *Brecht v. Abrahamson*, 507
21 U.S. 619, 637-38 (1993). *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (a federal court must assess
22 the prejudicial impact of an error under the *Brecht* standard in all habeas cases). Under *Brecht*,
23 "the standard for determining whether habeas relief must be granted is whether the . . . error 'had
24 substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S.
25 at 623, 637. In making this determination, the judge asks directly, "'Do I, the judge, think that
26 the error substantially influenced the jury's decision?'" *O'Neal v. McAninch*, 513 U.S. 432, 436
27 (1995). If a federal habeas judge is in "grave doubt" about whether a constitutional error "had
28 substantial and injurious effect or influence in determining the jury's verdict," the error is not

harmless and "the petitioner must win." *Id.* at 436, 445.  When, as here, a state court has found a constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's determination is objectively unreasonable." *Towery v. Schriro*, 641 F.3d 300, 307 (9th Cir. 2010).

In its decision on petitioner's habeas petition, the California Superior Court concluded that petitioner failed to demonstrate prejudice resulting from his alleged inability to call witnesses at his disciplinary hearing.  The state court noted that petitioner had not clearly shown "to what S. Cheser would testify" or "that the testimony of Correctional Officer Vierra could have produced a better outcome."  ECF No. 38-1 at 3.  This court agrees.  Even if C/O Cheser had been called as a witness at petitioner's disciplinary hearing, there is no evidence before the court that he would have testified that his statements in the RVR about his conversation with petitioner on January 7, 2008 were false.  Petitioner's guess as to what C/O Cheser would have testified to is based on speculation.  Speculation is insufficient to establish that the failure to call C/O Cheser as a witness had a substantial and injurious effect on the outcome of the disciplinary proceedings.

Petitioner has also failed to establish that Officer Vierra would have testified consistently with petitioner's version of the events had he been called as a witness at the disciplinary hearing. Assuming arguendo that Vierra would have testified that on January 7, 2008, petitioner showed Vierra his medical card authorizing him to report to the medical clinic on Monday mornings, and that Vierra said "OK" and wrote this information down, this testimony would not have affected the outcome of the disciplinary hearing.  There is no evidence before the court that petitioner would have been found not guilty of the charge of refusing a direct order by C/O Cheser to report to work simply because petitioner showed a different officer his medical card allowing him to go to the medical clinic.

In sum, after a review of the record this court is not left in "grave doubt" as to whether the denial of petitioner's request, if any, to call Officers Cheser and Vierra as witnesses had a substantial and injurious effect on the outcome of petitioner's disciplinary proceedings, and thus agrees with the state court that any error in this regard was harmless.  Assuming *arguendo* that petitioner's request to call these two witnesses at the disciplinary hearing was denied, the decision

of the California Court of Appeal that petitioner failed to demonstrate prejudice is not objectively unreasonable and cannot be set aside.

For the foregoing reasons, petitioner is not entitled to federal habeas relief on his due process claims before this court.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  June 8, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE